UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**RAYMOND O'NEILL** and **ORGANIZATION OF PROFESSIONAL AVICULTURISTS, INC.,**

    Plaintiffs,

v.   **Case No.:**

**CLIFTON A. HORTON** in his official capacity as the Division of Management Authority, and **U.S. FISH AND WILDLIFE SERVICE;**

    Defendants.

_____/

---

**COMPLAINT FOR MANDAMUS RELIEF**

---

**s/ David A. Garcia**
DAVID ANTHONY GARCIA
Fla. Bar No. 1015673
**s/ Mark A. Prada**
MARK ANDREW PRADA
Fla. Bar No. 91997
Prada Urizar, PLLC
3191 Coral Way, Suite 500
Miami, FL 33145
Dir.: (305) 319-1309
Ofc.: (786) 703-2061
Fax: (786) 708-9508
dgarcia@pradaurizar.com
mprada@pradaurizar.com

*Counsel for Plaintiff*

Date: October 2, 2020

1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**RAYMOND O'NEILL,** and **ORGANIZATION OF PROFESSIONAL AVICULTURISTS, INC.,**

    Plaintiffs,

v.                                                              Case No.:

**CLIFTON A. HORTON** in his official capacity as the Division of Management Authority, and **U.S. FISH AND WILDLIFE SERVICE;**

    Defendants.

_____/

**COMPLAINT FOR DECLARATORY, INJUNCTIVE AND MANDAMUS RELIEF**

The plaintiffs, Raymond O'Neil and the Organization of Professional Aviculturists, Inc. (OPA), by and through undersigned counsel submits this complaint for Declaratory, Injunctive and Mandamus Relief, and in support thereof, alleges as follows:

**JURISDICTION AND VENUE**

1. This action is brought against the defendants, and those acting under them, for refusing to comply with their federally mandated duties under the Wild Exotic Bird Conservation Act ("WBCA"), codified at 16 U.S.C § 4901 - 4916; title 50 of the Code of Federal Regulations; the Administrative Procedure Act (APA), 5 U.S.C. §§555(b), 701, et seq.

2. This action is brought pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

3. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

2

4. This Court may grant relief pursuant to 5 U.S.C. §§702, 706 (judicial review of agency action); 28 U.S.C. §1361 (the Mandamus Act); 28 U.S.C. §1651 (the All Writs Act); and 28 U.S.C. §§2201-02 (the Declaratory Judgment Act).

5. Venue is proper in this district under 28 U.SC. §1391(e)(1)(B) because "a substantial part of the events or omissions giving rise to the claim[s]" occurred in this district.

## PARTIES

6. Plaintiff, Raymond O'Neill, is an aviculturist, citizen of South Africa and Great Britain who has filed a Form 3-200-49, Approval, Amendment Or Renewal Of A Cooperative Breeding Program under the Wild Bird Conservation Act ("WBCA") with the defendants. Exh. A.

7. Plaintiff, the Organization of Professional Aviculturists, Inc. (OPA), is a national, non-profit organization that is a trade and conservation group that represents, supports and acts on behalf of professional aviculturists. A professional aviculturist is anyone whose profession includes aspects of caring, breeding, or promoting the continued existence of avian species. The OPA represents many of the most well-regarded aviculturists in the United States.

   a. The OPA is incorporated in Florida, with its principal place of business in Lakeland, Florida. OPA's business is regularly conducted in Lakeland, Florida, Miami, Florida, and via teleconference with board members located in Florida, California, Oklahoma, Texas, and Singapore.

   b. The OPA and its members are to provide the avicultural organizational oversight for the proposed cooperative breeding program to be established in Miami, Florida. As such, the OPA is harmed by the defendant's violations of the APA, in their failure to timely adjudicate the proposed cooperative breeding program.

8.	Defendant, Clifton A. Horton, is sued in his official capacity as an officer of the Division of Management Authority of U.S. Fish and Wildlife Service and is the officer in charge of adjudicating the plaintiffs' proposal for a cooperative breeding program.

9.	Defendant, U.S. Fish and Wildlife Service, is an agency within the Department of Interior that is charged with implementing the Wild Exotic Bird Conservation Act.

## STATUTORY AND REGULATORY BACKGROUND

10.	The Wild Exotic Bird Conservation Act (WBCA), codified at 16 U.S.C § 4901 - 4916, was originally passed into law on October 23, 1992.

11.	The WBCA restricts the importation and exportation "exotic birds" that are "not indigenous to the 50 States or the District of Columbia." 16 U.S.C § 4903(2)(A).

12.	The self-professed purpose of the WBCA is:

> To promote the conservation of exotic birds by— (1) assisting wild bird conservation and management programs in the countries of origin of wild birds; (2) ensuring that all trade in species of exotic birds involving the United States is biologically sustainable and is not detrimental to the species; (3) limiting or prohibiting imports of exotic birds **when necessary** to ensure that—(A) wild exotic bird populations are not harmed by removal of exotic birds from the wild for the trade; or (B) exotic birds in trade are not subject to inhumane treatment; and (4) encouraging and supporting effective implementation of the Convention.

16 U.S.C § 4902 (emphasis added.)
.
13.	The reference to Convention, "means the Convention on International Trade in Endangered Species of Wild Fauna and Flora, as amended, signed in Washington on March 3, 1973, and the Appendices." 16 U.S.C § 4903(1). Abbreviated as the CITES.

14. On October 23, 1993, the "importation of any exotic bird of a species that is listed in any Appendix to the Convention is prohibited unless the Secretary makes the findings described in section 4905(c) of this title and includes the species in the list published under section 4905(a) of this title." 16 U.S.C. § 4904(3).

15. This provision created a moratorium on imports for the purpose of temporarily halting importation to the United States to "ensure that the market in the United States for exotic birds does not operate to the detriment of the survival of species in the wild." 16 U.S.C. § 4901(2)

16. This moratorium on imports affected and continues to affect 320 of the approximately 350 species of *Psittaciformes,* i.e. parrots, the few exceptions to the moratorium are found at 50 C.F.R. § 15.33.

17. The United States Fish and Wildlife Service ("USFWS") was delegated, through the Secretary of the Department of the Interior, the authority to implement the WBCA. 50 C.F.R. § 1.2.

18. The USFWS is required to periodically, "after notice and an opportunity for public comment, publish in the Federal Register a list of species of exotic birds that are listed in an Appendix to the Convention and that are not subject to a prohibition or suspension of importation." 16 U.S.C. § 4905(a)(1).

19. At no point since the passage of the WBCA in 1992 has the USFWS taken any action to amend the lists of species that are not subject to the moratorium.

20. For over 27 years the WBCA has effectively closed the legal market on exotic birds. 50 C.F.R. § 15.33.

21. However, the WBCA at 16 U.S.C. § 4911, does include certain exceptions to the importation moratorium which would allow the USFWS to issue an import permit, if they determine "such importation is not detrimental to the survival of the species and the bird is being imported exclusively for any of the following purposes:"

    a. "Scientific research." 16 U.S.C. § 4911(1).

    b. "As a personally owned pet of an individual who is returning to the United States after being continuously out of the country for a minimum of one year." 16 U.S.C. § 4911(2).

    c. "Zoological breeding or display programs." 16 U.S.C. § 4911(3).

    d. "Cooperative breeding programs that are—(A) designed to promote the conservation of the species and maintain the species in the wild by enhancing the propagation and survival of the species; and (B) developed and administered by, or in conjunction with, an avicultural, conservation, or zoological organization that meets standards developed by the Secretary." 16 U.S.C. § 4911(4)(A)-(B).

22. The defendants created the regulations applicable to Cooperative Breeding Program under 16 U.S.C. § 4911(4), on November 16, 1993; these regulations have not been amended. 58 FR 60536.

23. The approval of a proposed cooperative breeding program by the defendants is governed by 50 C.F.R. § 15.26.

24. The approval of a cooperative breeding program does not in and of itself approve the importation of any birds to the United States. 50 C.F.R. § 15.24.

25. If the creation of a cooperative breeding program is approved by the USFWS, the members of the program must still request that each individual bird to be imported for the purposes of the cooperative breeding program be approved for import under the conditions established by 50 C.F.R. § 15.24.

26. A proposal for the approval of a cooperative breeding program must include "a description of the exotic bird(s) to be imported or to be covered under the program, including the common and scientific names of the species, number, sex ratio (if applicable), and age class." 50 C.F.R. § 15.26(a)(1).

27. The proposal must also include "a statement of the reasons the applicant is justified in obtaining this approval, and a description of the cooperative breeding program requested," 50 C.F.R. § 15.26(a)(2), which must include the following:

   a. "A breeding protocol, including a genetic management plan and breeding methods." 50 C.F.R. § 15.26(a)(2)(i).

   b. "A statement on the plans for developing and maintaining a self-sustaining population in captivity of the exotic bird species." 50 C.F.R. § 15.26(a)(2)(ii).

   c. "Details on the system of record keeping and tracking of birds and their progeny, including how individual specimens will be marked or otherwise identified." 50 C.F.R. § 15.26(a)(2)(iii).

   d. "A statement on the relationship of such a breeding program to the conservation of the exotic bird species in the world." 50 C.F.R. § 15.26(a)(2)(iv).

   e. "Details on the funding of this program." 50 C.F.R. § 15.26(a)(2)(v).

   f. And, "plans for disposition of the exotic birds and any progeny." 50 C.F.R. § 15.26(a)(2)(vi).

28. The proposal must include "a qualification statement for each individual who will be overseeing the cooperative breeding program." 50 C.F.R. § 15.26(a)(3).

29. The proposal must include "a statement of the oversight of the program by the avicultural, zoological, or conservation organization, including their monitoring of participation in the program, criteria for acceptance of individuals into the program, and the relationship of the cooperative breeding program to enhancing the propagation and survival of the species." 50 C.F.R. § 15.26(a)(4).

30. The private oversight organization can be any private organization that has an avicultural, zoological, or conservation mission.

31. To the plaintiffs' knowledge, the defendants have not further refined the scope of organizations which qualify to provide private oversight.

32. A proposal for a CBP that provides the documentation and information stated *supra* will be adjudicated against the factors for approval listed at 50 C.F.R. § 15.26(b), which are:

   a. "Whether the cooperative breeding program for which the approval is requested is adequate to justify removing the exotic bird from the wild or otherwise changing its status." 50 C.F.R. § 15.26(b)(1).

   b. "Whether the granting of this approval would be detrimental to the survival of the exotic bird species in the wild, including whether the exotic birds were bred in captivity or will be taken from the wild, taking into consideration the conservation status of the species in the wild." 50 C.F.R. § 15.26(b)(2).

   c. "Whether the granting of this approval would conflict with any known program intended to enhance the survival of the population from which the exotic bird species was or would be removed." 50 C.F.R. § 15.26(b)(3).

    d. "Whether the cooperative breeding program for which the permit is requested would be likely to enhance or promote the conservation of the exotic bird species in the wild **or result in a self-sustaining population of the exotic bird species in captivity**." 50 C.F.R. § 15.26(b)(4) (emphasis added.)

    e. "Whether the expertise or other resources available to the program appear adequate to successfully accomplish the objectives stated in the application." 50 C.F.R. § 15.26(b)(5).

33. All applications for a cooperative breeding program filed under 50 C.F.R. § 15.26(a) shall be published in the Federal Register requesting "written data, views, or arguments with respect to the application" from interested parties. 50 C.F.R. § 15.26(c).

34. A cooperative breeding program will be approved for two years. 50 C.F.R. § 15.26(e).

35. Upon the approval of a cooperative breeding program, the members of the program can apply for permits to be issued to allow for the individual import of specimens to populate that program, the issuance of those permits is governed by 50 C.F.R. § 15.24.

## FACTUAL ALLEGATIONS

36. On March 18, 2019, the plaintiffs filed a Form 3-200-49, Approval, Amendment Or Renewal Of A Cooperative Breeding Program under the Wild Bird Conservation Act ("WBCA") with the defendants. Exh. A.

37. The plaintiff, Raymond O'Neill is a member of the cooperative breeding program ("CBP") proposed on the Form 3-200-49. *Id.*

38. The plaintiff, the Organization of Professional Aviculturists is the oversight organization for the proposed CBP. *Id.*

39. The other members on the form, who are not plaintiffs in this litigation are Paul Marolf and Jason Mitchell. *Id.*

40. The application proposed a new cooperative breeding program for African Grey Parrots (*Psittacus erithacus*). *Id.*

41. The proposed CBP would be operated at 22045 SW 254th St. Miami, FL 33031. *Id.*

42. The proposed CBP would house approximately 4,000 African Grey Parrots (*Psittacus erithacus*) which will be grouped into approximately 2,000 breeding pairs. *Id.*

43. The African Grey Parrot (*Psittacus erithacus*) is native to equatorial Africa, including Angola, Cameroon, the Congo, Gabon, Ivory Coast, Ghana, Kenya, and Uganda. Exh. C.

44. The African Grey Parrot (*Psittacus erithacus*) is not native to South Africa. *Id.*

45. The specimens of African Grey Parrots (*Psittacus erithacus*) to be imported to the United States to populate the CBP would be acquired from breeding facilities located in South African registered with the CITES Secretariat in Geneva, Switzerland.

46. The approval of the proposed CBP would not result in any specimens of African Grey Parrots (*Psittacus erithacus*) being removed from its native wild range.

47. Those facilities are Sondlo owned by Raymond O'Neill, CITES registration number A-ZA-526 and Amazon Inn, owned by Jason Mitchell, CITES registration number A-ZA-511. Exh. D.

48. If this CBP is approved, a CITES export permit must be issued by the South African Department of Environmental Affairs before any specimen African Grey Parrot (*Psittacus erithacus*) can be exported from South Africa. 50 CFR § 23.20.

49. If this CBP is approved, a CITES import permit must be issued by the U.S. Fish and Wildlife Service, Division of Management Authority before any African Grey Parrot (*Psittacus erithacus*) can be imported into the United States. 50 C.F.R. 15.24.

50. If the CBP is approved, the Organization of Professional Aviculturist will serve as the avicultural oversight organization. Exh. A.

51. Direct oversight of the CBP will be provided by OPA Vice-President, Jean Pattinson, a world-renowned African parrot specialist. *Id.*

52. The purpose of the CBP is to create a renewed and self-sustaining population of African Grey Parrot (*Psittacus erithacus*) in U.S. aviculture by increasing the reproductive rate of the captive population to sustainable levels. *Id.*

53. This purpose is contemplated by 50 C.F.R. § 15.26(b)(5).

54. The proposal for the establishment of the CBP highlights that the creation of a sustainable population in the United States would require meeting the competing demands which include the strong interest of the pet market.

55. The U.S. avicultural population of the African Grey Parrot (*Psittacus erithacus*) cannot be sustainable if sufficient specimens are not produced domestically to satisfy the large demand for pets which are never returned to the domestic breeding population. *Id.*

56. Sufficient offspring of African Grey Parrot (*Psittacus erithacus*) must be produced yearly to satisfy both the needs of captive avicultural breeding and the demands of the pet market.

57. The proposal submitted to the defendants included a large number of letters provided by the U.S. avicultural community attesting to the disappearance of the African Grey Parrot *(Psittacus erithacus)* from U.S. aviculture due to declining reproductive rate. *Id.*

58. The proposal submitted to the defendants also included a letter from John Aynes, lead cooperator for Cooperative Breeding Program #40 ("CBP #40). *Id.*

   a. CBP #40 is a currently operating CBP, approved and operated under by 50 C.F.R. § 15.26.

   b. CBP #40 is established for the breeding of African Grey Parrots (*Psittacus erithacus*).

   c. The letter provided by John Aynes states that he has consulted with members of this proposed CBP and believes that this CBP would be in the best interest of the captive avicultural population of the African Grey Parrot (*Psittacus erithacus*) in the United States.

   d. Based on these discussions, John Aynes also states that it would also be in the best interest of these two CBPs to operate separately.

59. On March 26, 2019, the defendants marked the plaintiffs' proposal as received. *Id.*

60. The plaintiffs regularly contacted the defendants after they received the proposal.

61. On November 19, 2019, the defendants advised the plaintiffs that the CBP proposal would be published in the Federal Register on November 20, 2019, seven months and twenty-five days after the proposal was received by the defendants.

62. Historically, such requests were published in the Federal Register within 1-2 months of the date the proposal was received by the defendants. Exh. E.

63. On November 20, 2019, the plaintiffs' CBP proposal was published in the Federal Register for a thirty-day comment period. 84 FR 64099.

64. The proposed CBP received 693 comments, the majority of which were non-substantive and/or postcard comments. 84 FR 64099.

65. A small percentage of these comments were substantive comments submitted by national animal rights organizations. 84 FR 64099.

66. Several of the comments submitted by these organizations requested that the defendants inform them of any decision on whether to grant the CBP prior to informing the plaintiffs. 84 FR 64099.

67. The plaintiffs are unaware of any legal authority that would permit or require the defendants to *ex parte* inform commenting organizations of a decision on the plaintiffs' proposal directly and prior to informing the plaintiffs.

68. The OPA commented in support of the proposed CBP and in opposition to the comments made by several of the animal rights organizations. 84 FR 64099.

69. The comment period closed on December 20, 2019. 84 FR 64099.

70. In the nine months and ten days since the comment period closed, the plaintiffs have received no substantive communication from the defendants as to the status of their proposal.

71. The defendants have not requested any information or attempted to negotiate with the plaintiffs over their proposed CBP.

### CLAIM FOR RELIEF
### Count I – Unreasonable Delay of Agency Action

72. The allegations in paragraphs 1-71 are realleged and incorporated herein.

73. The actions of the defendants relating to the plaintiffs' proposal have caused unlawful, unreasonable delay in the adjudication of the proposal, and constitute an unlawful, unreasonable failure to adjudicate the petition, in violation of the APA, the WBCA, the Code of Federal Regulations.

74. Applying the *TRAC* factors it is clear that the defendants have unreasonably delayed the adjudication of the plaintiff's proposal. *Telecommunications Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984).

> **(1)** the time agencies take to make decisions must be governed by a "*rule of reason*," **(2)** where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, *that statutory scheme may supply content for this rule of reason*, **(3)** delays that might be reasonable in the sphere of economic regulation *are less tolerable when human health and welfare are at stake*, **(4)** the court should consider the *effect of expediting delayed action on agency activities of a higher or competing priority*, **(5)** the court should also take into account the nature and extent of the interests prejudiced by delay and **(6)** the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.

*Id.* at 80. (Cleaned up and emphasis added).

75. Here the plaintiffs' proposed CBP has been pending since March 26, 2019, as of the date of this filing that means the proposal has been pending for over one year and six months.

76. CBPs are approved for a term of two years, 50 C.F.R. § 15.26(e), therefore, this proposal has been pending for three quarters of the time that it would be approved for; an unreasonable delay in light of this fact.

77. If the CBP is approved the plaintiffs will have to expend a large amount of financial resources in preparation for relocating the animals, a decision that remains pending the final adjudication of this proposal.

78. The adjudication of permits and proposal is principle responsibility of the USFWS, Division of Management Authority.

79. The unreasonably delayed adjudication of the proposal is prohibiting the plaintiffs from achieving their conservation purpose of creating "a self-sustaining population of the exotic bird species in captivity." 50 C.F.R. § 15.26(b)(4).

80. Pursuant to 5 U.S.C. §§702, 706(1), the plaintiffs are entitled to declaratory and injunctive relief to "compel agency action unlawfully withheld or unreasonably delayed."

## CLAIM FOR RELIEF
### Count II – Petition for Writ of Mandamus

1. The allegations in paragraphs 1-71 are realleged and incorporated herein.

2. Alternatively, the plaintiffs are entitled to mandamus relief to compel an adjudication of their proposal because: (1) the defendants have a nondiscretionary, ministerial, clear duty to adjudicate the proposal; (2) the plaintiffs have a clear right to an adjudication of the proposal within a reasonable time; and (3) there is no other adequate remedy available to the plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE**, the plaintiffs prays that this Honorable Court grant the following relief:

(a) Assume jurisdiction over this matter;

(b) Declare that the defendants have unreasonably delayed, and have unreasonably failed to complete, the adjudication of the plaintiffs' proposal for a Cooperative Breeding Program, in violation of law;

(c) Order the defendants to adjudicate the plaintiffs' proposal for a Cooperative Breeding Program within a reasonable period of time determined by this Court;

(d) Alternatively, grant a writ of mandamus;

(e) Order the defendants to adjudicate the plaintiffs' proposal for a Cooperative Breeding Program within a reasonable period of time determined by this Court;

(f) Retain jurisdiction over this case to ensure compliance with all of this Court's orders;

(g) Award costs, and attorney's fees under the Equal Access to Justice Act (EAJA), as amended, 5 U.S.C. §2412, and on any other basis justified under law; and

(h) Grant any other and further relief that the Court deems just and proper.

**Dated: October 2, 2020**            **s/ David A. Garcia**
DAVID A. GARCIA
Fla. Bar No. 1015673
**s/ Mark A. Prada**
MARK ANDREW PRADA
Fla. Bar No. 91997
Prada Urizar, PLLC
3191 Coral Way, Suite 500
Miami, FL 33145
Dir.: (305) 319-1309
Ofc.: (786) 703-2061
Fax: (786) 708-9508
dgarcia@pradaurizar.com
mprada@pradaurizar.com

*Counsels for Plaintiffs*